## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| BIOPURE CORPORATION, | ) Case No. 09-16725-FJB |
| | ) |
| | ) |
| Debtor. | ) |

### ORDER AUTHORIZING SALE OF DEBTOR'S GENERAL PARTNERSHIP INTEREST IN ELEVEN HURLEY STREET ASSOCIATES FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND OTHER ENCUMBRANCES

Upon the motion [Docket No. 10] (the "Sale Motion") of the above-captioned debtor and debtor in possession (the "Debtor") seeking, inter alia, entry of an order pursuant to sections 105(a), 363, 365, 503 and 507 of chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code") and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the sale of substantially all of the assets of the Debtor, including the Debtor's fifty percent (50%) general partnership interest (the "EHSA Asset") in Eleven Hurley Street Associates, a Massachusetts general partnership (the "EHSA Partnership"); and the Sale Motion having been served as set forth therein; and it appearing that proper and adequate notice of the Sale Motion has been given and that no other or further notice is required; and after due deliberation thereon; and good and sufficient cause appearing therefor,

NOW, THEREFORE, THE COURT HEREBY FINDS THAT:

A.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

B.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this District and this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Notice of the Sale

Motion having been given as described above, is proper, timely, adequate, sufficient and proper under the circumstances.

C.    Capitalized terms used herein that are not otherwise defined in this Order shall have the meanings ascribed to such terms in the Asset Purchase Agreement, dated as of September 3, 2009, between the Debtor and Delare LLC (the "Purchaser") (the "Asset Purchase Agreement")[1], or, if not otherwise defined in the Asset Purchase Agreement or this Order, the meanings ascribed to such terms in the Sale Motion.

D.    On July 21, 2009, the Court entered its Order (A) Approving Bid Procedures; (B) Authorizing and Scheduling an Auction; (C) Approving Payment of an Expense Reimbursement; (D) Establishing Procedures Relating to the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts; (E) Approving the Form and Manner of Notices; and (F) Scheduling Sale Hearing [Docket No. 59] (the "Bidding Procedures Order"). The Bidding Procedures Order approved certain bidding procedures (the "Bidding Procedures") for the Debtor's assets.

E.    The Debtor has sufficiently marketed the EHSA Asset that is subject to the Asset Purchase Agreement in good faith under the circumstances to secure the highest and best offer therefor. The Debtor provided sufficient notice through its broker of the Bidding Procedures Order and Sale Motion to potential interested parties. The terms and conditions set forth in the Asset Purchase Agreement, and the transactions contemplated thereby, represent fair and reasonable terms and conditions, including the amount of the purchase price, and constitute the highest and best offer obtainable for the EHSA Asset and are fair and adequate.

F.    An auction was held on August 18, 2009 (the "Auction") in accordance with the Bidding Procedures Order. Immediately prior to the conclusion of the Auction, the

----

[1]    A copy of the Asset Purchase Agreement without its exhibits is attached hereto as Exhibit A.

COI-1427524v6

Debtor selected the Purchaser as the Successful Bidder (as such term defined in the Bidding

Procedures Order) for the EHSA Asset.

        G.    Proper, timely, adequate and sufficient notice of the Bidding Procedures,

the Auction, the Sale Motion and the hearing on the foregoing has been provided in accordance

with sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and

6006, and no other or further notice is required.

        H.    A reasonable opportunity to object or be heard with respect to the Sale

Motion and the relief requested therein, and the rights of third parties to submit higher or

otherwise better offers for the EHSA Asset in accordance with the Bidding Procedures, have

been afforded to all interested persons and entities.

        I.    The Bidding Procedures afforded a full, fair and reasonable opportunity

for any entity to make a higher or otherwise better offer to purchase the EHSA Asset.

        J.    The Debtor and the Purchaser have complied with the Bidding Procedures

in all material respects or as otherwise approved by this Court.  The bidding and auction process

was non-collusive, fair and reasonable, conducted in good faith and resulted in the Debtor's

obtaining the highest available value for the EHSA Asset.

        K.    The Debtor has reasonably exercised its sound business judgment in

determining (1) to enter into the Asset Purchase Agreement and (2) to sell and transfer the EHSA

Asset to the Purchaser.  The relief requested in the Sale Motion is in the best interests of the

Debtor's estate, its creditors and other parties in interest.

        L.    The Asset Purchase Agreement was negotiated, proposed and entered into

by the Debtor and the Purchaser without collusion, in good faith and from arm's-length

bargaining positions.  Neither the Debtor nor the Purchaser has engaged in any conduct that

COI-1427524v6

would cause or permit the Asset Purchase Agreement to be avoided under section 363(n) of the

Bankruptcy Code.  The Purchaser is not an "insider" or "affiliate" of the Debtor (as such terms

are defined in the Bankruptcy Code).  The Purchaser is a good faith purchaser under

section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded

thereby in consummating the transactions contemplated by the Asset Purchase Agreement.  The

Purchaser will be acting in good faith within the meaning of section 363(m) of the Bankruptcy

Code in Closing the transactions contemplated by the Asset Purchase Agreement at all times

after the entry of this Order.

      M.    The consideration to be provided by the Purchaser for the EHSA Asset

pursuant to the Asset Purchase Agreement (i) is fair and reasonable, (ii) represents the highest

and best offer for the EHSA Asset and (iii) constitutes reasonably equivalent value and fair

consideration under the Bankruptcy Code and under the laws of the United States, any state,

territory, possession and the District of Columbia.

      N.    The EHSA Asset constitutes property of the Debtor's estate within the

meaning of section 541(a) of the Bankruptcy Code.  Upon the entry and effectiveness of this

Order, the Debtor shall have full power and authority to execute and deliver the Asset Purchase

Agreement and all other documents contemplated thereby; and no further consents or approvals

will be required for the Debtor to consummate the transactions contemplated by the Asset

Purchase Agreement.

      O.    With respect to any and all entities asserting any options, pledges, security

interests, claims, equities, reservations, third party rights, rights of first refusal, voting trusts or

similar arrangements, liens, trusts or deemed trusts (whether contractual, statutory or otherwise),

charges, including court-ordered charges, or other encumbrances or restrictions on or conditions

-4-

to transfer or assignment of any kind (including, without limitation to the generality of the foregoing, restrictions or conditions on or to the transfer, assignment or renewal of licenses, permits, registrations and authorizations or approvals of or with respect to governmental units and instrumentalities), whether direct or indirect, absolute or contingent, matured or unmatured, liquidated or unliquidated, perfected, registered or filed, secured or unsecured, on or against the EHSA Asset owned by the Debtor (collectively, the "Encumbrances"), except as set forth in Paragraph 7 below, either (i) such entity has consented to the sale and transfer, license and assignment, as applicable, free and clear of its Encumbrance, with such Encumbrance to attach to the proceeds of such sale and transfer, license and assignment, as applicable, respectively, (ii) applicable nonbankruptcy law permits the sale of the EHSA Asset free and clear of such Encumbrance, (iii) such Encumbrance is in bona fide dispute or (iv) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such Encumbrance, so that the conditions of section 363(f) of the Bankruptcy Code have been met. Any claims that could have been asserted with respect to the Debtor, the Purchaser or the EHSA Asset are deemed satisfied.

   P. Upon the Closing of the Asset Purchase Agreement, the sale and transfer of the EHSA Asset to the Purchaser shall be a legal, valid and effective transfer of the EHSA Asset to the Purchaser, and shall vest in the Purchaser all right, title and interest in the EHSA Asset in accordance with the terms and conditions of the Asset Purchase Agreement and this Order free and clear of any Encumbrances including, without limitation, any claims pursuant to any successor or successor-in-interest liability theory, under sections 105(a), 363(f) and 365 of the Bankruptcy Code.

COI-1427524v6

Q.    Except as expressly set forth in the Asset Purchase Agreement with respect to assumed liabilities and obligations (collectively, the "Assumed Liabilities"), the Purchaser shall not have any liability for any (i) obligation of the Debtor, or (ii) any claim against the Debtor related to the EHSA Asset by reason of the transfer of such EHSA Asset to the Purchaser.  The Purchaser shall not be deemed, as a result of any action taken in connection with the purchase of the EHSA Asset or otherwise, to:  (1) be a successor to the Debtor (other than with respect to the Assumed Liabilities); or (2) have, de facto or otherwise, merged with or into the Debtor.  The Purchaser is not acquiring or assuming any liability, warranty or other obligation of the Debtor, except as expressly set forth in the Asset Purchase Agreement.

R.    The Purchaser would not have entered into the Asset Purchase Agreement and would not consummate the transactions contemplated thereby if the sale of the EHSA Asset to the Purchaser or its assignees was not, except as otherwise provided in the Asset Purchase Agreement with respect to the Assumed Liabilities, free and clear of all Encumbrances of any kind or nature whatsoever, or if the Purchaser would, or in the future could (except and only to the extent expressly provided in the Asset Purchase Agreement with respect to the Assumed Liabilities), be liable for any of such Encumbrances or other liabilities (such other liabilities or obligations being referred to collectively as the "Successor Liabilities").

S.    The Purchaser does not constitute a successor to the Debtor because: (1) except as otherwise set forth in the Asset Purchase Agreement, the Purchaser is not expressly or impliedly agreeing to assume any of the Debtor's liabilities; (2) the transactions contemplated by the Asset Purchase Agreement do not amount to a consolidation, merger or a de facto merger of the Debtor and the Purchaser; (3) the Purchaser is not merely a continuation of the Debtor;

COI-1427524v6

and (4) the transactions contemplated by the Asset Purchase Agreement are not being entered

into fraudulently or in order to escape liability from the Debtor's debts.

    T.  All findings of fact and conclusions of law announced by the Court at the

hearing in relation to the Sale Motion are hereby incorporated herein.

    NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED

THAT:

    1.  The Sale Motion is GRANTED with respect to the EHSA Asset as set

forth herein.

    2.  The objection filed by Varney Hintlian and Frederick Hintlian

(collectively, the "Hintlians") as general partners of the EHSA Partnership (Docket No. 136)

(the "Hintlian Objection") has been resolved pursuant to the terms and conditions set forth in this

Order.  All other objections to the Sale Motion or the relief requested therein that have not been

withdrawn, waived or settled are hereby OVERRULED on the merits.

    3.  All persons and entities are hereby forever prohibited and enjoined from

taking any action that would adversely affect or interfere with the ability of the Debtor to sell and

transfer the EHSA Asset to the Purchaser free and clear of any and all Encumbrances in

accordance with the terms of the Asset Purchase Agreement and this Order.

    4.  The Asset Purchase Agreement is hereby approved in all respects, and

shall be deemed in full force and effect, binding and benefiting the Debtor and the Purchaser.

    5.  The Debtor is authorized, empowered and directed to implement and

consummate all of the transactions contemplated by the Asset Purchase Agreement (each,

collectively, a "Sale"), including, without limitation, to sell the EHSA Asset to the Purchaser, all

on the terms and conditions of the Asset Purchase Agreement, for the purchase price set forth in,

and determined in accordance with, the Asset Purchase Agreement.  The Debtor is authorized,

empowered and hereby directed to deliver assignments and other such documentation that may

be necessary or requested by the Purchaser in accordance with the terms of the Asset Purchase

Agreement to evidence the transfers required by the Asset Purchase Agreement.

6.      Upon the Closing of the Sale, the Purchaser shall take title to and

possession of the EHSA Asset subject only to the Assumed Liabilities.  Except as set forth in

Paragraph 7 below, pursuant to section 363(f) of the Bankruptcy Code, the transfer of title to the

EHSA Asset shall be free and clear of any and all Encumbrances, including, without limitation,

any claims pursuant to any Successor Liability theory; provided, however, that the Purchaser

shall not be relieved of liability with respect to the Assumed Liabilities.  All Encumbrances shall

attach solely to the proceeds of the Sale with the same validity and priority as they attached to

the EHSA Asset immediately prior to the Closing of the Sale.  No "cure costs" shall be payable

by any parties pursuant to section 365 of the Bankruptcy Code or otherwise in connection with

the Sale.

7.      Notwithstanding any other provision of this Order, with respect to the

EHSA Asset, the Purchaser is to be treated as an assignee of the Debtor's interest in the Eleven

Hurley Street Associates Partnership Agreement (the "EHSA Partnership Agreement"), entitled

to receive the economic rights to which the Debtor would have been entitled with respect to the

EHSA Asset, but, unless admitted to the EHSA Partnership as a general partner under the EHSA

Partnership Agreement, shall not be entitled to exercise any other rights of a general partner in

such interest, including the right to vote or otherwise participate in the management or

administration of the EHSA Partnership, except as expressly set forth below.  For the purposes of

clarity and to resolve the Hintlian Objection, the following provisions shall apply to the EHSA

-8-

Asset (unless the Purchaser is admitted to the EHSA Partnership or otherwise agreed by the Purchaser and the Hintlians):

a.     The EHSA Partnership is not dissolved, but shall continue with Purchaser as an assignee of the Debtor's interest therein with the understanding that Purchaser shall not be a partner of the EHSA Partnership and, as such, shall not have the authority to bind the EHSA Partnership, nor shall the Purchaser be liable for any debts or obligations of the EHSA Partnership.

b.     The Purchaser shall have the right as assignee of the Debtor's interest in the partnership to continue to participate in any profits, losses and distributions pursuant to Section 7 of the EHSA Partnership Agreement and the distribution of any proceeds pursuant to Section 8 of the EHSA Partnership Agreement.

c.     The definition of "Majority in Interest" set forth in Section 1 of the EHSA Partnership Agreement shall mean those then-current partners who have contributed at least 66 2/3% of the total capital contributions made by then-current partners to the EHSA Partnership.[2]

d.     Except as specifically modified by this Order, the Purchaser and the Hintlians are bound by the terms and conditions of the EHSA Partnership Agreement.

e.     The EHSA Partnership Agreement shall not be modified without the consent of the Purchaser.

---

[2]     The sole and present partners are Varney J. Hintlian and Frederick J. Hintlian.

COI-1427524v6

f.      The Purchaser shall be entitled to participate in any capital calls pursuant to Section 5 of the EHSA Partnership Agreement to maintain its proportionate interest in the EHSA Partnership.

8.      Effective upon the Closing Date and except with respect to Assumed Liabilities, all persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Purchaser, its successors and assigns, or the relevant EHSA Asset, with respect to any (a) Encumbrance arising under, out of, in connection with or in any way relating to the Debtor, the EHSA Asset or the operation of such EHSA Asset prior to the Closing of the sale of the EHSA Asset or (b) Successor Liability, including, without limitation, the following actions:

a.      Commencing or continuing in any manner any action or other proceeding against the Purchaser, its successors, assets or properties;

b.      Enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Purchaser, its successors, assets or properties;

c.      Creating, perfecting or enforcing any lien or other Encumbrance against the Purchaser, its successors, assets or properties;

d.      Asserting any setoff, right of subrogation or recoupment of any kind against any obligation due the Purchaser or its successors;

COI-1427524v6

e.    Commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or

f.    Revoking, terminating or failing or refusing to renew any license, permit or authorization to operate any of the EHSA Asset or conduct any of the businesses operated with the EHSA Asset.

9.    In addition, without limiting the generality of the foregoing, except as otherwise specifically set forth in the Asset Purchase Agreement, the Purchaser shall not assume or be obligated to pay, perform or otherwise discharge any debts, obligations and liabilities of the Debtor arising pursuant to the Debtor's ownership or operation of their facilities prior to the date of the applicable Closing, including, but not limited to, any Successor Liabilities. The Purchaser has given substantial consideration under the Asset Purchase Agreement for the benefit of the holders of Encumbrances. The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Purchaser, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Encumbrances against the Debtor or the EHSA Asset.

10.    Any amounts that become payable by the Debtor to the Purchaser pursuant to the Asset Purchase Agreement (and related agreements executed in connection therewith) as of the Closing Date (a) shall constitute allowed administrative expenses of the Debtor's estate under sections 503(b)(1) and 507(a)(1) of the Bankruptcy Code and (b) shall be paid by the Debtor in the time and manner provided for in the Asset Purchase Agreement or the applicable related agreement.

CO1-1427524v6

11.    The Purchaser is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

12.    Pursuant to Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure, this Order shall be effective immediately upon entry and the ten day stays under such rules are hereby waived.

13.    A Certified Copy of this Order may be filed with the appropriate clerk and/or recorded with the appropriate recorder to act to cancel the liens and other Encumbrances of record with respect to the EHSA Asset.

14.    The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to implement the terms and conditions of the Asset Purchase Agreement and the provisions of this Order.

15.    This Order shall be binding in all respects upon the Debtor, their estates, all creditors of, and holders of equity interests in, any Debtor (whether known or unknown), any holders of Encumbrances on the EHSA Asset, all successors and assigns of the Purchaser, the Debtor and its affiliates and subsidiaries, and any trustees, if any, subsequently appointed in the Debtor's chapter 11 case or upon a conversion to chapter 7 under the Bankruptcy Code of the Debtor's case.  This Order and the Asset Purchase Agreement shall inure to the benefit of the Debtor, its estate, its creditors, the Purchaser and their respective successors and assigns.  The Asset Purchase Agreement and any related agreement shall not be subject to rejection.

16.    This Order is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies,

COI-1427524v6

governmental departments, secretaries of state, federal and local officials and all other persons

and entities who may be required by operation of law, the duties of their office or contract, to

accept, file, register or otherwise record or release any documents or instruments, or who may be

required to report or insure any title or state of title in or to any lease; and each of the foregoing

persons and entities is hereby directed to accept for filing any and all of the documents and

instruments necessary and appropriate to consummate the transactions contemplated by the Asset

Purchase Agreement.

17.     Nothing contained in any chapter 11 plan confirmed in these cases or the

order confirming any such plan or in any other order in these cases (including any order entered

after any conversion of these cases to cases under chapter 7 of the Bankruptcy Code) shall alter,

conflict with or derogate from the provisions of the Asset Purchase Agreement, any related

agreement or the terms of this Order, including, but not limited to, (a) the obligation of the

Debtor to pay any amounts due to the Purchaser pursuant to the Asset Purchase Agreement or

any transactions contemplated thereby in the time and manner provided in the Asset Purchase

Agreement and without further order of this Court and (b) the status of any such payments as

administrative priority expenses of the Debtor's estate pursuant to sections 503(b) and 507(a)(l)

of the Bankruptcy Code.

18.     This Order constitutes authorization under all applicable jurisdictions'

versions of the Uniform Commercial Code for the Purchaser to file UCC termination statements

with respect to all security interests in or liens on the EHSA Asset.

19.     The failure specifically to include any particular provision of the Asset

Purchase Agreement in this Order shall not diminish or impair the effectiveness of such

COI-1427524v6

provision, it being the intent of the Court that the Asset Purchase Agreement be authorized and approved in its entirety.

20.    The Asset Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estate.

21.    This Court shall retain jurisdiction over the transactions contemplated in the Asset Purchase Agreement for purposes of enforcing the provisions of this Order and the Asset Purchase Agreement.

Dated: Boston, Massachusetts
_____Sept 10_____, 2009

UNITED STATES BANKRUPTCY JUDGE

COI-1427524v6

# EXHIBIT A

**[Asset Purchase Agreement]**

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (the "<u>Agreement</u>") is made and entered into as of this 9th day of September 2009, by and between Delare LLC, a Delaware limited liability company ("<u>Purchaser</u>"), and Biopure Corporation, a Delaware corporation ("<u>Seller</u>" or "<u>Debtor</u>").

### WITNESSETH:

WHEREAS, Seller is a general partner of Eleven Hurley Street Associates (the "<u>Partnership</u>"), a Massachusetts general partnership, and the owner of fifty percent of the outstanding general partnership interests in the Partnership (the "<u>Interest</u>");

WHEREAS, Seller has filed a voluntary petition for relief (the "<u>Petition</u>") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, <u>et seq.</u>, as amended (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the District of Massachusetts (the "<u>Bankruptcy Court</u>");

WHEREAS, subject to the terms and conditions set forth herein and the approval and order of the Bankruptcy Court, Seller is agreeing to sell the Interest, as the same shall be modified and amended by the Sale Order (as defined below), including, in particular, paragraph 7 thereof (the "<u>Assigned Interest</u>"), in accordance with sections 105, 363 and 365 of the Bankruptcy Code, and to substitute Purchaser in its place as an assignee; and

WHEREAS, Purchaser is agreeing to purchase, including through one or more affiliates designated by Purchaser in accordance with Section 9.11, the Assigned Interest and assume the Assumed Liabilities (as hereinafter described), all on the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements hereinafter contained, and intending to be bound hereby, the parties hereby agree as follows:

1.      <u>Transfer of Partnership Interest</u>.

   1.1.   <u>Purchase and Sale of the Partnership Interest</u>.

        1.1.1.  On the Closing Date, as hereinafter defined, in consideration of the covenants, representations and obligations of each of the parties hereunder, and subject to the conditions hereinafter set forth, Seller shall irrevocably sell, assign, transfer,

convey and deliver to Purchaser, and Purchaser shall purchase from Seller, all of Seller's right, title and interest as of the Closing Date in, to and under the Assigned Interest.

1.1.2. In accordance with paragraph 7 of the Sale Order, which is incorporated by reference herein, Purchaser is to be treated as an assignee of the Debtor's interest in the Eleven Hurley Street Associates Partnership Agreement (the "EHSA Partnership Agreement").

1.2    Instruments of Transfer. The sale, assignment, transfer, conveyance and delivery of the Assigned Interest to Purchaser and the assumption of liabilities provided herein by Purchaser shall be made by instruments of assignment, transfer and conveyance provided for in Section 3 below and such other instruments as may reasonably be requested by Purchaser or Seller.  None of the foregoing documents shall increase in any material way the obligations imposed by this Agreement upon Seller or Purchaser.

2.    Consideration.

2.1    Purchase Price.

2.1.1    The cash consideration to be paid by Purchaser to Seller for the Assigned Interest (the "Purchase Price") shall be $850,000.

2.1.2    Concurrently with the mutual execution and delivery of this Agreement (the date of such mutual execution and delivery is sometimes referred to herein as the "Execution Date"), Purchaser shall deposit into escrow (the "Escrow") with counsel to Seller (the "Escrow Holder") $50,000 (the "Deposit") in immediately available funds (funds delivered in this manner are referred to herein as "Good Funds"), pursuant to joint escrow instructions to be delivered to and acknowledged by the Escrow Holder on or before the Execution Date.  Seller and Purchaser shall execute an Escrow Agreement with Escrow Holder concurrently herewith.  Upon receipt of the Deposit, the Escrow Holder shall immediately deposit the Deposit into an interest-bearing account.  The Deposit shall become non-refundable upon the earlier of (x) entry of the Sale Order approving Purchaser as the approved buyer, or (y) the termination of the transaction contemplated by this Agreement by reason of Purchaser's default (a "Purchaser Default Termination").  At the Closing (as defined below), the Deposit (and any interest accrued thereon) shall be delivered to Seller and credited toward payment of the Purchase Price in the manner specified in Section 2.1.3 below.  In the event the Deposit becomes non-refundable by reason of a Purchaser Default Termination, Escrow Holder shall immediately disburse the Deposit and all interest accrued thereon to Seller to be retained by Seller for its own account.  If the transactions contemplated herein terminate by reason of (A) Seller's default hereunder or (B) the failure of a condition to

Purchaser's obligation to purchase the Assigned Interest, the Escrow Holder shall return to Purchaser the Deposit (together with all interest thereon).

2.1.3   On the Closing Date, Purchaser shall (i) pay and deliver to Seller, by wire transfer of Good Funds, the Purchase Price less the Deposit (and interest accrued thereon) and (ii) instruct the Escrow Holder to deliver the Deposit (and any interest accrued thereon) to Seller on the Closing Date, by wire transfer of Good Funds.

2.2   Assumed Liabilities. Purchaser shall, effective as of the Closing Date, assume and perform only those liabilities and obligations accruing under the Assigned Interest on or after the Closing Date as are expressly set forth in paragraph 7 of the Sale Order. Seller shall pay any "cure amounts" owing under the Assigned Interest as of the Closing Date which the Bankruptcy Court may order to be paid as a condition to Purchaser's assumption and assignment of the Assigned Interest. Purchaser shall indemnify, defend, protect and save and hold Seller harmless from and against any and all claims or demands asserted by any person or entity in connection with the liabilities and obligations assumed by Purchaser pursuant to this Section 2.2. Other than liabilities and obligations of Seller expressly assumed by Purchaser hereunder, Purchaser is not assuming and shall not be liable for any liabilities or obligations of Seller.

3.   Closing Transactions.

3.1   Closing.   The Closing of the transactions provided for herein (the "Closing") shall take place at the offices of Craig and Macauley Professional Corporation, 600 Atlantic Avenue, Boston, Massachusetts 02210.

3.2   Closing Date.   The Closing shall be held within three business days after satisfaction or waiver of the conditions to closing contained in Section 4 (the "Closing Date") but in no event later than October 30, 2009 (the "Outside Date"). In the event the conditions to Closing have not been satisfied or waived on or before the Outside Date, then any party who is not in material default hereunder may terminate this Agreement by delivering to the other party written notice of termination. Alternatively, the parties may mutually agree to an extended Closing Date. Until this Agreement is either terminated or the parties have agreed upon an extended Closing Date, the parties shall diligently continue to work to satisfy all conditions to Closing.

3.3   Seller's Deliveries to Purchaser at Closing. On the Closing Date, subject to satisfaction or waiver of the conditions precedent set forth in Sections 4.1 and 4.3, Seller shall make the following deliveries to Purchaser:

3.3.1    An Assignment and Assumption Agreement substantially in the form attached hereto as <u>Exhibit A</u>, duly executed by Seller, pursuant to which Seller assigns the Interest (the "<u>Assignment Agreement</u>").

3.4    <u>Purchaser's Deliveries to Seller at Closing</u>. On the Closing Date, subject to satisfaction or waiver of the conditions precedent set forth in Sections 4.2 and 4.3, Purchaser shall make or cause to be made the following deliveries to Seller:

3.4.1    That portion of the Purchase Price to be delivered by Purchaser directly to Seller at the Closing in accordance with Section 2.1.3 (and Purchaser shall instruct Escrow Holder to deliver the Deposit and accrued interest thereon to Seller in accordance with Section 2.1.3).

3.4.2    The Assignment Agreement, duly executed by Purchaser.

3.5    <u>Sales, Use and Other Taxes</u>. Any sales, use, purchase, transfer, fixed asset, stamp, documentary stamp, use or other taxes which may be payable by reason of the sale of the Interest under this Agreement or the transactions contemplated herein shall be borne and timely paid by Purchaser, and Purchaser shall indemnify, defend, protect, and save and hold Seller harmless from and against any and all claims, charges, interest or penalties assessed, imposed or asserted in relation to any such taxes.

4.    <u>Conditions Precedent to Closing.</u>

4.1    <u>Conditions to Seller's Obligations</u>. Seller's obligation to make the deliveries of Seller set forth in Section 3 on the Closing Date shall be subject to the satisfaction or waiver by Seller of each of the following conditions:

4.1.1    All of the representations and warranties of Purchaser contained in Section 6 shall continue to be true and correct as of the Closing Date in all material respects, all covenants and obligations to be performed by Purchaser on or prior to the Closing Date shall have been performed in all material respects, and Purchaser shall have certified the foregoing to Seller in writing.

4.1.2    Purchaser shall have executed and delivered to Seller the Assignment Agreement and each other document reasonably requested by Seller pursuant to Section 1.2.

4.1.3    Seller shall have received the total Purchase Price in Good Funds.

4.1.4    Purchaser shall have delivered to Seller appropriate evidence of all necessary corporate action by Purchaser in connection with the transactions contemplated herein, including, without limitation: (i) certified copies of resolutions

duly adopted by Purchaser's directors, members or other managing body approving the transactions contemplated herein and authorizing the execution, delivery, and performance by Purchaser of this Agreement; and (ii) a certificate as to the incumbency of officers or authorized persons of Purchaser executing this Agreement and any instrument or other document delivered in connection with the transactions contemplated herein.

4.2    Conditions to Purchaser's Obligations. Purchaser's obligation to make the deliveries of Purchaser set forth in Section 3 on the Closing Date shall be subject to the satisfaction or waiver by Purchaser of each of the following conditions:

4.2.1    All representations and warranties of Seller contained in Section 5 shall continue to be true and correct on the Closing Date in all material respects, all covenants and obligations to be performed by Seller on or prior to the Closing Date shall have been performed in all material respects, and Seller shall have certified the foregoing to Purchaser in writing.

4.2.2    Seller shall have executed and delivered to Purchaser the Assignment Agreement and each other document reasonably requested by Purchaser pursuant to Section 1.2.

4.2.3    No cure amount shall have been established by the Bankruptcy Court that is not paid in accordance with Section 2.2.

4.2.4    OPK Biotech LLC shall have purchased substantially all of the Seller's other assets pursuant to that certain Asset Purchase Agreement dated as of August 20, 2009 between OPK Biotech LLC and Seller.

4.3    Conditions to Obligations of Purchaser and Seller.    The respective obligations of Purchaser and Seller to consummate the transactions contemplated by this Agreement are subject to the fulfillment, on or prior to the Closing Date, of each of the following conditions (any or all of which may be waived by Purchaser and Seller in whole or in part to the extent permitted by applicable law):

4.3.1.    There shall not be in effect any order by any court, governmental body or arbitrator of competent jurisdiction restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated hereby; and

4.3.2.    The Bankruptcy Court shall have entered an order, in the agreed form attached hereto as Exhibit B (the "Sale Order"), for the sale of the Assigned Interest, and such Sale Order shall not be subject to a stay.

4.4    Termination.  If any of the above conditions is neither satisfied nor waived

on or before the Outside Date, then any party who is not then in default hereunder may terminate this Agreement by delivering to the other written notice of termination, and, provided further, that if Purchaser terminates hereunder on the grounds that one or more of the conditions in Sections 4.2 or 4.3 have not been satisfied or waived, then Purchaser shall be entitled to the return of the Deposit. Any waiver of a condition shall be effective only if such waiver is stated in writing and signed by the waiving party; provided, however, that the consent of a party to the Closing shall constitute a waiver by such party of any conditions to Closing not satisfied as of the Closing Date.

5.     Seller's Representations and Warranties. Seller hereby makes the following representations and warranties to Purchaser, which shall not survive closing hereunder and shall be deemed satisfied and terminated upon closing:

       5.1     Validity of Agreement. Upon entry of the Sale Order, this Agreement shall constitute the valid and binding obligation of Seller enforceable in accordance with its terms.

       5.2     Organization, Standing and Power. Seller is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware. Subject to the Seller's obtaining the Sale Order and applicable provisions of bankruptcy law, Seller has all requisite corporate power and authority to execute, deliver and perform this Agreement and all writings relating hereto.

       5.3     Partnership Agreement.    Attached hereto as Exhibit C is a true and complete copy of the EHSA Partnership Agreement, including any and all amendments, modifications and suplements thereto. To the Seller's knowledge, no partner is in material breach of, or material default under, the EHSA Partnership Agreement. Other than the EHSA Partnership Agreement, there is no oral or written agreement between Seller, on the one hand, and either of the Partners, on the other hand, with respect to the Interest or the Partnership.    Except as set forth on Schedule 5.3, since January 1, 2007, Seller has not consented to any action requiring the consent of a Majority in Interest (as defined in the EHSA Partnership Agreement).

       5.4     Financial Information.    Attached as Schedule 5.4 are the [un]audited financial statements and K-1's of the Partnership for 2007 and 2008, and a statement of all Capital Costs (as defined in the EHSA Partnership Agreement) previously incurred by Seller. The Partnership does not own any asset other than the real property located at 11 Hurley Street, Cambridge, Massachusetts.

       5.5     Real Property. The Partnership does not lease any real property, and does not own any real property other than the real property commonly known as 11 Hurley Street, Cambridge, Massachusetts and described on Exhibit A to the EHSA Partnership Agreement (the "Real Property"). The Partnership owns good and marketable title to

the Real Property. The Real Property is leased in its entirety by the Partnership to Seller pursuant to a Commercial Lease dated August 29, 1994, as amended by a First Amendment to Lease dated as of December 29, 1995 and supplemented by an option exercise letter from Seller to the Partnership dated August 28, 2007 (collectively, the "Lease"). The Real Property is not encumbered by any monetary liens other than (i) the Mortgage and Security Agreement from the Partnership to East Cambridge Savings Bank (the "Lender"), dated as of August 31, 2005, in the original principal amount of $1,035,000.00, and (ii) the Mortgage and Security Agreement from the Partnership to the Lender, also dated as of August 31, 2005, in the original principal amount of $500,000.00 (collectively, the "Mortgages"). The Lease has not been subordinated to either one of the Mortgages. The Partnership is not in default under the Lease or the Mortgages, and no event has occurred which, with the giving of notice or the passage of time or both, would constitute such a default. There are no contracts or agreements to which the Partnership is a party to sell or further encumber the Real Property. All real property taxes and assessments against the Real Property which are due and payable have been paid in full. The Partnership has received no notice, and has no knowledge, of any pending or threatened condemnation or requisition of any portion of the Real Property by any governmental authority. The Real Property is in good working and operating condition and repair and is in compliance with all applicable laws.

6.    <u>Purchaser's Representations and Warranties.</u>    Purchaser hereby makes the following representations and warranties to Seller, which shall not survive closing hereunder and shall be deemed satisfied and terminated upon closing:

6.1    <u>Validity of Agreement.</u>    All action on the part of Purchaser necessary for the authorization, execution, delivery and performance of this Agreement by Purchaser, including, but not limited to, the performance of Purchaser's obligations hereunder, has been duly taken. This Agreement, when executed and delivered by Purchaser, shall constitute the valid and binding obligation of Purchaser enforceable in accordance with its terms.

6.2    <u>Organization, Standing and Power.</u>    Purchaser has all requisite corporate power and authority to own, lease and operate its properties, to carry on its business as now being conducted and to execute, deliver and perform this Agreement and all writings relating hereto.

6.3    <u>No Conflicts or Violations.</u>    The execution and delivery of this Agreement, the consummation of the transactions contemplated herein, and the performance of, fulfillment of and compliance with the terms and conditions hereof by Purchaser do not and will not: (i) conflict with or result in a breach of the operating agreement or other organizational documents of Purchaser; (ii) violate any statute, law, rule or regulation, or any order, writ, injunction or decree of any court or governmental authority; or (iii) violate or conflict with or constitute a default under any agreement, instrument or

writing of any nature to which Purchaser is a party or by which Purchaser or its assets
or properties may be bound.

6.4.    <u>Financing.</u>  Purchaser represents that it has sufficient funds available to
consummate the transactions contemplated herein.

6.5.    <u>Compliance with Securities Laws</u>.  Purchaser understands that the Interest
is intended to be offered and sold in compliance with the provisions of Section 4(1)
under the Securities Act of 1933, as amended (the "<u>Act</u>"), and appropriate state
securities law exemptions.  Purchaser hereby represents and warrants as follows (none
of which will limit Seller's representations and warranties in Section 5):

6.5.1.  Purchaser acknowledges that (i) the Interest is a speculative
investment which involves a high degree of risk of loss by Purchaser of his investment
therein, and (ii) there are substantial restrictions on the transferability of (including
under the EHSA Partnership Agreement and under applicable federal and state
securities laws), and there will be no public market for the Interest and, accordingly, it
may not be possible for Purchaser to liquidate the Interest in case of emergency or
otherwise.

6.5.2.  Purchaser has sufficient knowledge and experience in financial and
business matters and in making investments of this type that Purchaser is capable of
evaluating the merits and risks of an investment in the Interest and of making an
informed investment decision with respect thereto.

6.5.3.  Purchaser acknowledges that the Seller has afforded Purchaser the
opportunity to ask questions and receive answers from the Seller or any persons acting
on its behalf, and access to any information requested, including the EHSA Partnership
Agreement, and, to Purchaser's knowledge, any request for such opportunity or
information has been fully complied with by Seller.

6.5.4.  Purchaser confirms that, in making its decision to purchase the
Interest, Purchaser has relied as to legal and tax related matters concerning its
investment upon independent investigation made by it, and its own professional tax
and other advisors.

6.5.5.  Purchaser is acquiring the Interest for Purchaser's own account and
for investment purposes only, not as a nominee or agent, and not with a view to or for
resale, distribution, subdivision or fractionalization thereof; Purchaser has no contract,
undertaking, understanding, agreement or arrangement, formal or informal, with any
person to sell, transfer or pledge to, or hold for, any person the Interest, or any part
thereof; Purchaser has no present plan or intention to enter into any such contract,
undertaking, agreement or arrangement.

7.    "AS IS" Transaction.  **PURCHASER HEREBY ACKNOWLEDGES AND AGREES THAT, EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN SECTION 5 ABOVE, THE SELLER MAKES NO REPRESENTATIONS OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO ANY MATTER RELATING TO THE INTEREST INCLUDING, WITHOUT LIMITATION, INCOME TO BE DERIVED OR EXPENSES TO BE INCURRED IN CONNECTION WITH THE INTEREST, THE VALUE OF THE INTEREST (OR ANY PORTION THEREOF), THE TRANSFERABILITY OF THE INTEREST, THE TERMS, AMOUNT, VALIDITY OR ENFORCEABILITY OF ANY ASSUMED LIABILITIES, THE TITLE OF THE INTEREST (OR ANY PORTION THEREOF), OR ANY OTHER MATTER OR THING RELATING TO THE INTEREST OR ANY PORTION THEREOF. PURCHASER FURTHER ACKNOWLEDGES THAT PURCHASER HAS CONDUCTED AN INDEPENDENT INSPECTION AND INVESTIGATION OF ALL SUCH MATTERS RELATING TO OR AFFECTING THE INTEREST AS PURCHASER DEEMED NECESSARY OR APPROPRIATE AND THAT IN PROCEEDING WITH ITS ACQUISITION OF THE INTEREST, EXCEPT FOR ANY REPRESENTATIONS AND WARRANTIES EXPRESSLY SET FORTH IN SECTION 5, PURCHASER IS DOING SO BASED SOLELY UPON SUCH INDEPENDENT INSPECTIONS AND INVESTIGATIONS. ACCORDINGLY, PURCHASER WILL ACCEPT THE INTEREST AT THE CLOSING "AS IS," "WHERE IS," AND "WITH ALL FAULTS."**

8.    Conduct and Transaction Prior to Closing.

8.1    Access to Partnership Records of Seller.  From and after the date of this Agreement until the Closing Date, Seller shall, upon reasonable advance notice, afford to Purchaser's officers, independent public accountants, counsel, lenders, consultants and other representatives who shall be bound as "Representatives" under the confidentiality agreement  heretofore signed by Purchaser, reasonable access during normal business hours to all records possessed by Seller pertaining to the Interest or the Partnership. Purchaser, however, shall not be entitled to access any materials containing privileged communications or information about employees, disclosure of which might violate an employee's reasonable expectation of privacy.   Purchaser expressly acknowledges that nothing in this Section 8.1 is intended to give rise to any contingency or condition to Purchaser's obligations to proceed with the transactions contemplated herein.

8.2    Actions Requiring Consent of "Majority in Interest" under Partnership Agreement.  Seller will not, without the prior written consent of Purchaser, which consent will not be unreasonably withheld, consent to any matter requiring the consent of a "Majority in Interest" (as defined in the EHSA Partnership Agreement).

9.    Miscellaneous.

9.1   <u>Notices.</u>  Unless otherwise provided herein, any notice, tender, or delivery to be given hereunder by either party to the other shall be deemed given (i) when delivered personally by hand, (ii) when sent by facsimile (with written confirmation of transmission) or (iii) three business days following the day sent by overnight courier (with written confirmation of receipt), in each case at the following addresses and facsimile numbers (or to such other address or facsimile number as a party may have specified by notice given to the other party pursuant to this provision):

|  |  |
|---|---|
| To Seller: | Biopure Corporation<br>Attention:  Jane Kober, Esq.<br>11 Hurley Street<br>Cambridge, Massachusetts 02141<br>Attention:  Jane Kober, Esq.<br>Facsimile:  (617) 234-6507 |
| <u>With a copy to:</u> | Craig and Macauley Professional Corporation<br>Attention: Christopher J. Panos, Esq.<br>Federal Reserve Plaza<br>600 Atlantic Avenue<br>Boston, Massachusetts 02210<br>Facsimile:  (617) 742-1788 |
| To Purchaser: | Delare LLC<br>c/o OPK<br>23, Bldg 1, Bolshaya Dmitrovka Str.<br>125009 Moscow<br>Russian Federation<br>Facsimile:  +7495 626 83 65<br>Attention:  Mr. David Henderson-Stewart |
| <u>With copies to:</u> | Jones Day<br>120, rue du Faubourg St. Honoré<br>75008 Paris<br>France<br>Facsimile:  +33 (0)1.56.59.39.38<br>Attention:  Wesley R. Johnson, Jr., Esq.<br><br>and<br><br>Jones Day<br>325 John H. McConnell Boulevard |

Suite 600
Columbus, Ohio 43215
Facsimile: (614) 461-4198
Attention: Joseph M. Witalec, Esq.

9.2    Entire Agreement.    This instrument and the documents to be executed pursuant hereto contain the entire agreement between the parties relating to the sale of the Interest. Any oral representations or modifications concerning this Agreement or any such other document shall be of no force and effect excepting a subsequent modification in writing, signed by the party to be charged, or the entry of an order by the Bankruptcy Court.

9.3    Modification.    This Agreement may be modified, amended or supplemented only by a written instrument duly executed by all the parties hereto, or the entry of an order by the Bankruptcy Court.

9.4    Closing Date.    All actions to be taken at the Closing pursuant to this Agreement shall be deemed to have occurred simultaneously, and no act, document or transaction shall be deemed to have been taken, delivered or effected until all such actions, documents and transactions have been taken, delivered or effected.

9.5    Severability. Should any term, provision or paragraph of this Agreement be determined to be illegal or void or of no force and effect, the balance of the Agreement shall survive.

9.6    Captions.    All captions and headings contained in this Agreement are for convenience of reference only and shall not be construed to limit or extend the terms or conditions of this Agreement.

9.7    Further Assurances.    Each party hereto will execute, acknowledge and deliver any further assurance, documents and instruments reasonably requested by any other party hereto for the purpose of giving effect to the transactions contemplated herein or the intentions of the parties with respect thereto.

9.8    Waiver.    No waiver of any of the provisions of this Agreement shall be deemed to, or shall, constitute a waiver of other provisions, whether or not similar, nor shall any waiver constitute a continuing waiver.  No waiver shall be binding unless executed in writing by the party making the waiver.

9.9    Payment of Fees and Expenses.    Except as otherwise provided in this Agreement, each party to this Agreement shall bear its own expenses incurred in connection with the negotiation and execution of this Agreement and each other

agreement, document and instrument contemplated by this Agreement and the consummation of the transactions contemplated hereby.

9.10    Survival.    Except for covenants and agreements hereunder to be performed after the Closing Date, none of the respective representations, warranties, covenants and agreements of Seller and Purchaser herein, or in any certificates or other documents delivered prior to or at the Closing, shall survive the Closing.

9.11    Assignments.    This Agreement shall not be assigned by either party hereto without the prior written consent of the other party hereto; provided that Purchaser may assign some or all of its rights and obligations hereunder to one or more of its affiliates.  No assignment of any obligations hereunder shall relieve the parties hereto of any such obligations prior to the Closing, but after which the assignee shall become solely responsible for any obligations assigned to it.   Upon any such permitted assignment, the references in this Agreement to Seller or Purchaser shall also apply to any such assignee unless the context otherwise requires.

9.12    Binding Effect.    Subject to the provisions of Section 9.11 above, this Agreement shall bind and inure to the benefit of the respective heirs, personal representatives, successors, and assigns of the parties hereto.

9.13    Applicable Law.    This Agreement shall be governed by and construed in accordance with the laws of the State of Massachusetts.

9.14    Good Faith.    All parties hereto agree to do all acts and execute all documents required to carry out the terms of this Agreement and to act in good faith with respect to the terms and conditions contained herein before and after Closing.

9.15    Construction.    In the interpretation and construction of this Agreement, the parties acknowledge that the terms hereof reflect extensive negotiations between the parties and that this Agreement shall not be deemed, for the purpose of construction and interpretation, drafted by either party hereto.

9.16    Counterparts.    This Agreement may be signed in counterparts. The parties further agree that this Agreement may be executed by the exchange of facsimile signature pages.

9.17    Time is of the Essence.    Time is of the essence in this Agreement, and all of the terms, covenants and conditions hereof.

9.18    Bankruptcy Court Jurisdiction.    PURCHASER AND SELLER AGREE THAT THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER ALL DISPUTES AND OTHER MATTERS RELATING TO (i) THE

INTERPRETATION AND ENFORCEMENT OF THIS AGREEMENT OR ANY ANCILLARY DOCUMENT EXECUTED PURSUANT HERETO; AND/OR (ii) THE PROPERTY AND/OR ASSUMED LIABILITIES, AND PURCHASER EXPRESSLY CONSENTS TO AND AGREES NOT TO CONTEST SUCH EXCLUSIVE JURISDICTION.

IN WITNESS WHEREOF, the parties hereto have executed this Asset Purchase Agreement as of the day and year first above written.

**SELLER:**

BIOPURE CORPORATION

**By:** _____
**Name:**
**Title:**

**PURCHASER:**

DELARE LLC

**By:** _____
**Name:**
**Title:**

[EXHIBITS TO BE ATTACHED]