# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF MASSACHUSETTS

## EASTERN DIVISION

| |
|---|
| **In re** |
| **PBBPC, INC. (f/k/a BIOPURE CORPORATION),** |
| **Debtor** |

**Chapter 11**
**Case Nos. 09-16725-FJB**

### MEMORANDUM OF DECISION ON
### MOTION TO ENFORCE ORDER AUTHORIZING SALE

OPK Biotech LLC ("OPK"), as purchaser of the debtor's assets in a court-authorized sale free and clear of all interests under 11 U.S.C. § 363(b) and (f), has moved for enforcement of the sale order against the Massachusetts Department of Workforce Development, Division of Unemployment Assistance (the "DUA").  OPK contends that the DUA has been violating the § 363(f) features of the order by charging OPK for contributions to the state's unemployment compensation fund according to a rate that imputes to OPK, as purchaser of assets from the debtor, certain attributes of the debtor—known collectively in distilled form as its "experience rating"—resulting in a higher contribution rate than would otherwise obtain.  The DUA responds (i) that it had no notice of the sale motion and therefore may yet be heard on its objection to sale pursuant to § 363(f), (ii) that the debtor was not entitled to authority under § 363(f) to sell free and clear of interests, and (iii) that the debtor's experience rating is not an "interest" within the meaning of § 363(f).  For the reasons set forth below, I hold that the DUA was not afforded adequate notice, that the DUA has nonetheless articulated no valid basis on which the court might have held that the debtor was not entitled to authority under § 363(f) to sell free and clear of interests, and that the debtor's experience rating is an "interest" within the meaning of § 363(f) that, in view of the Sale Order's authorization under § 363(f), the Commonwealth may not apply to OPK.

**FACTS AND PROCEDURAL HISTORY**

The debtor, known at the time of its bankruptcy filing as Biopure Corporation but now known as

PBBPC, Inc. ("the Debtor"), filed its petition for relief under Chapter 11 of the Bankruptcy Code on July

16, 2009.  That same day the Debtor also filed a motion for order approving sale of substantially all of its

assets free and clear of liens, claims, and encumbrances and for approval of related procedures (the

"Sale Motion").   The Sale Motion included the following demand for relief:

> The Debtor requests authority to sell the [assets] free and clear of liens,
> claims, charges, security interests, restrictions and encumbrances of any
> kind or nature (collectively, "Encumbrances") to the fullest extent
> permitted by the Bankruptcy Code, with such Encumbrances, if any, to
> attach to the net proceeds of the [asset sale], as applicable.

The Sale Motion also included a proposed sale order and requested its entry "substantially in the form

attached hereto."

The Debtor served notice of the sale Motion on the Office of the Attorney General ("OAG") for

the Commonwealth of Massachusetts but did not otherwise serve notice on the DUA.  Then as now, this

court's local rules specified:

> (f) Whenever notice is required to be given to the Massachusetts Division of
> Unemployment Assistance, it shall be mailed to:
>
>> Commonwealth of Massachusetts
>> Division of Unemployment Assistance
>> Bankruptcy Unit, 5th Floor, Attn: Chief Counsel
>> 19 Staniford Street
>> Boston, MA 02114-2502

MLRB App. 2, at paragraph (f).  Neither the DUA nor the Attorney General filed a response to the sale

motion.  Though OPK contends that its service on the OAG was effectively service on the DUA, OPK does

not contend that the DUA received notice of the Sale Motion other than by virtue of the service effected

on the OAG.  OPK does not contend that the DUA had actual notice.

At an auction held on August 18, 2009 in accordance with approved bidding procedures for the

sale of substantially all of the Debtor's assets, OPK prevailed with a bid of $4,050,000.  On August 20,

2009, this Court entered the requested sale order approving the sale to OPK ("the Sale Order").  The

Sale Order included the following relevant findings:

- "Proper, timely, adequate and sufficient notice of the Bidding Procedures, the Auction, the Sale Motion and the hearing on the foregoing has been provided in accordance with sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006, and no other or further notice is required."  Sale Order, ¶ G.

- OPK is a good faith purchaser under section 363(m) of the Bankruptcy Code.  Sale Order, ¶ L.

- The requirements of § 363(f) of the Bankruptcy Code have been met.  The transfer to OPK of the purchased assets shall be free and clear of all Encumbrances,[1] including any claims pursuant to any successor or successor-in-interest liability theory.  Sale Order, ¶¶ O, P.

- OPK, as purchaser, will not be deemed a successor of the Debtor.  Sale Order, ¶ Q.

- OPK would not have entered into the asset purchase agreement or and would not consummate the transaction if OPK would or could "be liable for certain types of employment related claims," including expressly "claims that might . . . arise under or pursuant to . . . state unemployment compensation laws[.]"  Sale Order, ¶ R.

The sale order also included the following relevant orders and decrees:

- "Upon the Closing of the Sale, the Purchaser shall take title to and possession of the Purchased Assets subject only to the applicable Permitted Encumbrances.  With the exception of such Permitted Encumbrances, pursuant to section 363(f) of the Bankruptcy Code, the transfer of title to the Purchased Assets and the Purchased Contracts shall be free and clear of any and all Encumbrances, including, without limitation, any claims pursuant to any Successor Liability theory or any of the Successor Liability Documents, Statutes and Claims[2]; provided, however, that the Purchaser [OPK] shall not be relieved of liability with respect to the Assumed Liabilities, including any obligations accruing under the Purchased Contract from and  after the Closing of the Sale.  All Encumbrances shall attach solely to the proceeds of the Sale with the same validity and priority as they attached to the Purchased Assets immediately prior to the Closing of the Sale."  Sale Order, ¶ 6.

---

[1] "Encumbrances" is a defined term meaning "any options, pledges, security interests, claims, equities, reservations, third party rights, rights of first refusal, voting trusts or similar arrangements, liens, trusts or deemed trusts (whether contractual, statutory or otherwise), charges, including court-ordered charges, or other encumbrances or restrictions on or conditions to transfer or assignment of any kind (including, without limitation to the generality of the foregoing, restrictions or conditions on or to the transfer, assignment or renewal of licenses, permits, registrations and authorizations or approvals of or with respect to governmental units and instrumentalities), whether direct or indirect, absolute or contingent, matured or unmatured, liquidated or unliquidated, perfected, registered or filed, secured or unsecured, on or against the Purchased Assets owned by the Debtor."  Sale Order, ¶ O.
[2] "Successor Liability Documents, Statutes and Claims" is a defined term that includes "claims that might . . . arise under or pursuant to . . . state unemployment compensation laws[.]"  Sale Order, ¶ R.

- "[E]xcept as otherwise specifically set forth in the Asset Purchase Agreement, the Purchaser shall not assume or be obligated to pay, perform or otherwise discharge any debts, obligations and liabilities of the Debtor arising pursuant to the Debtor's ownership or operation of their facilities prior to the date of the applicable Closing, including, but not limited to, any Successor Liabilities in respect of the Successor Liability Documents, Statues and Claims or otherwise." Sale Order, ¶ 9.

- "The Purchaser [OPK] is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code." Sale Order, ¶ 17.

The language of each of these findings, orders, and decrees in the Sale Order was substantially in the form of—indeed in most respects identical to—the language of the proposed sale order that the Debtor had appended to the Sale Motion.

The sale of the purchased assets to OPK closed in two phases in September 2009, and OPK thereafter commenced doing business in Massachusetts. After being informed that OPK had acquired the assets of the Debtor, the DUA issued a notice informing OPK that as a result of the transfer of substantially all assets of the Debtor to OPK, the DUA had determined, subject to a right of appeal, that OPK would be considered a "successor employer" to the Debtor, that the account and experience rating of the Debtor would therefore be transferred to OPK, and that OPK's contribution rate for 2009 and 2010 would accordingly be 12.27 percent. The DUA continued to apply the same rate in 2011. OPK contends, and the DUA does not deny, that this is a substantially steeper rate than would have applied hade OPK not been burdened with the Debtor's account and experience rating.

OPK appealed the DUA's determination, and the DUA informed OPK that it does not intend to change its determination. OPK and the DUA have agreed to postpone further appeal hearings at the agency level pending disposition of the present motion. OPK has been paying the DUA based on the higher contribution rate pending resolution of the present motion. OPK alleges that as of March 3, 2011, it had made $289,680.02 in contributions to the DUA based on the 12.27 percent contribution rate, an amount that OPK contends exceeds the appropriately assessed portion thereof by $221,782.59.

By the present motion, OPK seeks an order (i) declaring that the sale to OPK pursuant to the Sale

Order was free and clear of the Debtor's experience rate and contribution rate as those terms are

defined in Mass. Gen. Laws c. 151A, § 14, (ii) requiring the DUA to refund to OPK overpayments

attributable to its attribution to OPK of the Debtor's experience rate, and (iii) compelling the DUA to a

assign to OPK a 2.89% contribution rate as an employer newly subject to Mass. Gen. Laws Chapter 151A

retroactive to the Sale Date, as such contribution rate may be adjusted from time to time in accordance

with OPK's experience rate without regard to the Debtor's pre-sale ratings.  The DUA opposes the

motion.  The Court took the matter under advisement without an evidentiary hearing, the parties being

in agreement as to the relevant facts as recounted above.


**POSITIONS OF THE PARTIES**

      i.        **OPK**

OPK advances two lines of argument.  The first is preclusion:  where the Attorney General of the

Commonwealth of Massachusetts was served with the Sale Motion and neither the Commonwealth nor

the DUA objected, the DUA has irrevocably waived its right to oppose the Sale Order and is now

estopped from doing so; and the DUA in therefore bound by the provisions in the Sale Order, which OPK

contends clearly enjoin the conduct at issue.  In an alternate version of this preclusion argument, OPK

also contends that the Sale Order is protected from attack and reconsideration by § 363(m) of the

Bankruptcy Code (protecting the validity of a sale to a good faith purchaser from the effects of reversal

or modification on appeal where the sale was not stayed pending appeal).

If the Court finds that the DUA is not precluded from challenging the Sale Motion's request for

authority to sell free and clear of interests under 11 U.S.C. § 363(f), then, In the alternative, OPK argues:

(i) that the Sale Order's authorization under § 363(f) was properly granted and should be sustained as

against any objection thereto by the DUA, both (a) because the DUA did not object to the Sale Motion

5

and therefore is deemed to have consented, which satisfies § 363(f)(2) and (b) because the DUA could

be compelled in a legal proceeding to accept a money satisfaction of its interest, which satisfies §

363(f)(5); (ii) that the Debtor's experience rating under Massachusetts law is an "interest" in property of

the bankruptcy estate within the meaning of § 363(f), and (iii) that the successor liability provision in the

Commonwealth's unemployment compensation statute is, by operation of the Supremacy Clause of the

U.S. Constitution, preempted both by § 363(f) of the Bankruptcy Code and by fundamental policies and

principles of the Bankruptcy Code.  These preempt the application of state law against OPK in a manner

that visits upon OPK the experience rating of the Debtor (however valid that application would have

been had this sale occurred outside of bankruptcy).

    In addition to these two lines of argument, OPK advanced a third in its motion:  that

Massachusetts law itself precludes the treatment of OPK as a successor to the Debtor.  By this

argument, OPK contends that it was improper even under Massachusetts law, G.L. c. 151A, § 14(n), for

the DUA to apply successor status to OPK.  OPK would thus have this court review the DUA's

determination on the application of Massachusetts law.  When asked at the hearing on this motion

whether this last argument wasn't properly addressed to the state courts, as it does not arise in this case

and involves nothing more than the proper interpretation and application of state law, OPK's counsel

stated that OPK was not in fact asking this court to determine the issue.[3]  I therefore construe this

argument as withdrawn (or perhaps as never having been advanced at all) and need not address the

substantial concerns about comity and jurisdiction to which it gives rise.

---

[3]  Counsel answered:  "The reason we raised it is not for the Court to make a determination under state law, but to
get the Court comfortable that what we're asking is—may not be contrary to state law."  Transcript of Hearing of
June 23, 2011, p. 25.

### ii.    DUA

The DUA responds as follows.  First, where the Bankruptcy Court, through its local rules, required service on the DUA at a specified address, the Debtor failed to serve the Sale Motion on the DUA at that address, and the DUA did not otherwise receive notice of the Sale Motion, notice was inadequate, and therefore the DUA is not now precluded from relitigating the propriety of relief under § 363(f) with respect to the "interest" of the DUA (if it is appropriately called an interest at all) that the present motion places in issue.  Second, the protections of § 363(m) are not available here because they may not be invoked against an interest holder that was not afforded notice of the sale.  Third, the conditions for sale free and clear of an interest under § 363(f) have not been met:  where the DUA received no notice, its lack of objection may not be deemed consent under § 363(f)(2); and a money satisfaction is not possible.  Fourth, the Debtor's experience rating is not an interest within the meaning of § 363(f), and therefore the bankruptcy court lacks authority to confer on OPK protection from taxation on the basis of the Debtor's experience rating according to the normal operation of state law.

### iii.  OPK's Reply

At the hearing on this motion, OPK answered the DUA's contention that it had not received adequate notice by citing to state law, G.L. c. 151A, § 42A, which states:  "In any action to enforce any provision of this chapter, or any criminal proceedings thereunder, the commissioner shall be represented by the attorney general, or by any attorney at law designated by the attorney general for such purpose."  OPK contends that the Sale Motion concerned enforcement, that the attorney general represented the commissioner (the director of the DUA), and therefore that it was appropriate to serve the OAG and not the DUA at the address specified by local rule.

**DISCUSSION**

    **i.**    **Notice and Preclusion**

    OPK's preclusion argument is essentially one of res judicata, also known as claim preclusion.

OPK argues that the Debtor's authority to sell free and clear of interests under § 363(f) was determined

by the Sale Order, a final order of this court, and that order now binds the DUA.[4]  I must reject this

argument.  The first requirement of res judicata is not simply a judgment (which I use here as

synonymous with final order) but a *valid* judgment.[5]  A judgment obtained without notice to a party is

invalid as against that party and therefore can have no preclusive effect as to that party.[6]  It does not

help that the final order contains a finding, as this one did, that "proper, timely, adequate and sufficient

notice . . . has been provided . . . and no other or further notice is required."  Such a finding, too, where

made without notice to the party to be bound, is no more valid or preclusive than the judgment itself.

    In this instance, the DUA contends that it was entitled to notice of the Sale Motion.  OPK does

not contend otherwise.   OPK argues that, in view of G.L. c. 151A, § 14A, it gave proper notice to the

DUA by serving the attorney general, but it does not deny that the DUA was entitled to notice.  It is

therefore undisputed that the DUA was entitled to notice.

    By local rule, this court directed that "[w]henever notice is required to be given to the

Massachusetts Division of Unemployment Assistance, it shall be mailed to" the DUA at its specified

Staniford Street address in Boston.[7]  The specified address indicated "Bankruptcy Unit" and "Attn: Chief

Counsel."[8]  The DUA was entitled to rely on this rule.  Where notice was not given in accordance with

this rule, and the DUA had no actual notice, I must conclude that the Sale Order does not preclude the

---

[4]  The preclusive effect of the Sale Order, a federal order, is therefore determined by federal law. *Monarch Life Ins. Co. v. Ropes & Gray*, 65 F.3d 973, 978 (1st Cir. 1995) ("Since the judgment . . . was rendered by a federal tribunal—the bankruptcy court—federal preclusion principles apply." (internal citations omitted)).

[5]  See, for example, *Manego v. Orleans Board of Trade*, 773 F.2d 1, 5 (1st Cir. 1985) (adopting Restatement (Second) of Judgments § 24(1) (1982), which in turn requires "a valid and judgment" as a condition of res judicata).

[6]  Restatement (Second) of Judgments §1 (1982) (unless a party has otherwise submitted to the jurisdiction of the court, a court's authority to render judgment against a party requires adequate notice to the party).

[7]  MLRB App. 2, at paragraph (f).

[8]  *Id*.

DUA from now challenging the Debtor's entitlement to authority under § 363(f) to sell its assets free and clear of any interest in those assets whereby the DUA might tax the buyer according to the experience rating of the Debtor.[9]

### ii.    Section 363(m)

In the alternative, OPK argues that the Sale Order is protected from collateral attack by 11 U.S.C. § 363(m).  This argument requires a difficult decision as to whether 11 U.S.C. § 363(m), and the policy of finality it embodies, should override constitutional concerns about lack of notice.[10]  However, were the Court to find that the Sale Order is now subject to collateral attack and reconsider the merits in light of the objections and arguments the DUA now adduces, the Court would, for the reasons set forth below, conclude (i) that authority to sell pursuant to § 363(f) was properly granted and (ii) that that the debtor's experience rating is an "interest" within the meaning of § 363(f) that, in view of the authorization under § 363(f), the Commonwealth may not apply to OPK.   Accordingly, the court may sustain the Sale Order on the merits and need not address the § 363(m) issue.

### iii.    Section 363(f)

The DUA's challenges to the sale order are two:  (i) that its right under state law to tax OPK as a successor to the Debtor is not an "interest" within the meaning of § 363(f), and therefore § 363(f) cannot have provided authority for the provisions in the sale order that OPK now seeks to enforce; and (ii) that the none of the five conditions for authorization under § 363(f) was satisfied, such that authorization under § 363(f) should not have entered at all.  I begin with the latter argument.

---

[9] To be clear, I do not hold that the Sale Order is invalid *in toto*, only that it cannot be preclusive against the DUA on the issue here presented.

[10] The majority position appears to be that due process trumps finality.  See, for example, *Esposito v. Title Ins. Co. of Pa., (In re Fernwood Markets)*, 73 B.R. 616 (Bankr. E.D. Pa. 1987) and *United States v. Moberg Trucking, Inc. (In re Moberg Trucking, Inc.)*, 112 B.R. 362 (B.A.P. 9th Cir.  1990).  But in *Matter of Edwards*, 962 F.2d 641, 644 (7th Cir.1992), the Court of Appeals ruled that finality controls.

### a.        Satisfaction of a § 363(f) Condition

Section 363(f) permits a trustee, or a debtor in possession exercising a trustee's powers

pursuant to 11 U.S.C. 1107(a), to sell property free and clear of an interest in such property provided at

least one of five enumerated conditions is satisfied.  OPK says that two were satisfied with respect to the

DUA.  One is that "such entity could be compelled, in a legal or equitable proceeding, to accept a money

satisfaction of such interest."  11 U.S.C. § 363(f)(5).  The Court agrees that the interest in question, if it is

an interest at all, is one for which the DUA could be compelled to accept a money satisfaction.  The

interest is a right of taxation, a right that is usually, ordinarily, preferredly, and probably exclusively

satisfied precisely by the payment of money.  Certainly the DUA could be compelled to accept a money

satisfaction.  Despite its disagreement, the DUA has articulated no argument to the contrary.  I therefore

conclude that § 363(f)(5) is satisfied and that there existed, as against the DUA, one of the five predicate

conditions.[11]


### b.        "Interest" under § 363(f)

The other issue is whether the right of taxation that the DUA is charged with enforcing is an

"interest" in property of the estate within the meaning of § 363(f).  "Interest" is not defined either in §

363(f) or elsewhere in the Bankruptcy Code.  The "interest" in question is the right of the

Commonwealth of Massachusetts, under its unemployment compensation statute, G.L. c. 151A, § 14(n),

to tax a "successor employer"—an employer that is the transferee of the entire organization, trade or

business of an employer, or substantially all the assets thereof—according to the experience rating of

the assignor employer.[12]  For purposes of this analysis, I assume without deciding that OPK is a successor

---

[11] The other condition on which OPK relies is that "such entity consents."  11 U.S.C. § 363(f)(2).  OPK argues that
consent may be found because the DUA was given notice and did not timely object.  Where the court has found
that notice was inadequate, this argument necessarily fails.

[12] In relevant part, the statute provides as follows:

employer within the meaning of this statute; I note that OPK disputes the DUA's determination to that effect.

Here, it is undisputed that the interest in question is not a lien or a right to take specific assets, or any assets, in satisfaction of a claim.  It is also undisputed that, by this interest, the DUA is not attempting to collect from OPK a debt owed by the Debtor.  The "interest" merely determines the rate at which OPK will be taxed on its own account.  For these reasons, if the DUA's right of taxation is an interest, it is at best atypical.

Still, there is a good reason to view this right as an interest in estate assets:  it imposes a debtor's experience rating on the buyer precisely because, and only because, the buyer purchased assets of the bankruptcy estate.  By operation of the state statute, the debtor's experience rating travels with the assets and encumbers their purchaser.

On virtually identical facts arising from application of the successor employer provisions of Michigan unemployment compensation law, the Sixth Circuit Court of Appeals held that the debtor's experience rating was *not* an "interest" within the meaning of §363(f).  *Michigan Employment Security Commission v. Wolverine Radio Company, Inc. (In re Wolverine Radio Company)*, 930 F.2d 1132, 1145-49

---

(n)(1) If the entire organization, trade or business of an employer, or substantially all the assets thereof, are transferred to another employer or employing unit, the transferee shall be considered a successor for the purpose of this section. . . .

(2) The successor shall take over and continue the employer's account, including its plus or minus balance and all other aspects of its experience under this chapter. . . .

(3) The account taken over by the successor employer shall remain liable with respect to accrued benefits and related rights based on employment in the transferred business, and all such employment shall be deemed employment performed for such employer.

G.L. c. 151A, § 14(n)(1)-(3).  Subsection 14(n)(2) also states:  "The successor shall be secondarily liable for any amounts owed by the employer to the fund at the time of such transfer."  This language would appear to permit the Commonwealth to hold the successor liable for amounts owed by the assignor employer.  I do not understand OPK to complain that the DUA is attempting to enforce against OPK any debt owed by the Debtor.  Therefore, this particular language is not implicated by the present motion; I need not and do not address it.

(6th Cir. 1991).  The court emphasized four factors:  (i) that the unemployment tax liability arose only by

virtue of the successor entity's post-petition employment of workers; (ii) that the tax liability bore no

relationship to the assignor employer's status as a debtor involved in bankruptcy proceedings; (iii) that

Michigan would have been free to impose successor status on the assignee by means unconnected to

the assignment of assets; and (iv) "[w]e see no reason to hold that the Bankruptcy Code provides [the

debtor's assignee] with a more preferable tax rate than employers who purchase the assets of a

predecessor not in bankruptcy."  *Id*. at 1149.

OPK contends that the Sixth Circuit later rejected *Wolverine*'s narrow interpretation of

"interest" in *Al Perry Enterprises, Inc. v. Appalachian Fuels, LLC*, 503 F.3d 538, 543 (6th Cir. 2007), but I

disagree; *Al Perry* does not address of the meaning of "interest."  Nonetheless, the justifications offered

in *Wolverine* are unsatisfying.  As to the first, it simply is not the case that the successor's

unemployment tax liability arose solely from the successor's employment of workers; it also arose in

part from the successor's purchase of the debtor's assets, by virtue of which the successor was being

taxed according to the debtor's experience rating.  As to the second—that the tax liability bore no

relationship to the assignor employer's status as a debtor involved in bankruptcy proceedings—there is

no evident reason why that should make any difference.  As to the third, it may be the case that

Michigan could have imposed successor status on the assignee by means unconnected to the

assignment of assets, but it is also true that, as in the present case, it did not; successor status was

imposed precisely as an incident of the transfer of assets.  And as to the fourth, the reason to hold that

the Bankruptcy Code provides a debtor's assignee with a more preferable tax rate than employers who

purchase the assets of a predecessor not in bankruptcy is that § 363(f), if it applies at all, so requires.

There exists a host of policy reasons for this requirement, and perhaps some against, but it is for

Congress to weigh the policy concerns, and Congress made the policy decision in § 363(f).

In *United Mine Workers of Am. 1992 Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.)*, 99 F.3d 574, 581-82 (4th Cir. 1996), the Fourth Circuit Court of Appeals addressed whether the right under the Coal Industry Retiree Health Benefit Act of 1992 of employee benefit plans and funds to demand premium payments from a coal operator's successor-in-interest by virtue of that successor's accession to the coal operator's assets was an interest within the meaning of §363(f).  The court reasoned:  "Congress did not expressly indicate that, by employing such language [i.e., "interests in such property" in § 363(f)], it intended to limit the scope of section 363(f) to *in rem* interests, strictly defined, and we decline to adopt such a restricted reading of the statute here."  *Id*. at 582.  The Court went on to hold that, because successor liability was predicated on the debtor/appellee's use of the assets being transferred, the appellants' rights were interests:

> [W]e hold that the Fund's and Plan's rights to collect premium payments from Appellees constitute interests in the assets that Appellees now wish to sell, or have sold already. Those rights are grounded, at least in part, in the fact that those very assets have been employed for coal-mining purposes: if Appellees had never elected to put their assets to use in the coal-mining industry, and had taken up business in an altogether different area, the Plan and Fund would have no right to seek premium payments from them.  Because there is therefore a relationship between (1) the Fund's and Plan's rights to demand premium payments from Appellees and (2) the use to which Appellees put their assets, we find that the Fund and Plan have interests in those assets within the meaning of section 363(f).

*Id*.

There is no binding precedent on the issue in the First Circuit.  I am satisfied that the position of the Fourth Circuit in *Leckie Smokeless* is the correct one and that *Wolverine* was wrongly decided.  As in *Leckie Smokeless*, the relationship between the asset and the right in question is dispositive.  The clear relationship between the DUA's right to tax according to the debtor's experience rating and the asset transfer on which that right is predicated makes the DUA's right an interest within the meaning § 363(f).

Section 363(f) therefore applies to the DUA's interest.  As OPK argues and the DUA does not dispute, where § 363(f) does apply, it preempts any state law to the contrary.  The sale order thus preempts the application of successor status to OPK under G.L. c. 151A, § 14.


**CONCLUSION**

Accordingly, the Court will enter an order (i) declaring that the sale to OPK pursuant to the Sale Order was free and clear of the Debtor's experience rate and contribution rate as those terms are defined in Mass. Gen. Laws c. 151A, § 14, and (ii) requiring the DUA to refund to OPK overpayments attributable to its attribution to OPK of the Debtor's experience rate.  To that end the Court will schedule a further hearing to determine what further process may be necessary to quantify the refund. OPK further requests that the court compel the DUA to assign to OPK a 2.89% contribution rate as an employer newly subject to G.L. c. 151A, retroactive to the Sale Date, as such contribution rate may be adjusted from time to time in accordance with OPK's experience rate without regard to the Debtor's pre-sale ratings. The court cannot dictate to the DUA what rate it should apply on a prospective basis: provided the DUA's determination of that issue does not run afoul of the Sale Order, the resolution of that issue will have no bearing on this bankruptcy case and therefore is outside this court's subject matter jurisdiction.


Date:  February 27, 2012

_____
Frank J. Bailey
United States Bankruptcy Judge